**EAST SIDE NEWS, INC., Plaintiff,**

v.

**CITY OF GENEVA, OHIO, et al., Defendants.**

Civ. A. No. C80–1117Y.

United States District Court,
N. D. Ohio, E. D.

Dec. 15, 1981.

---

Bernard A. Berkman, Larry S. Gordon, J. Michael Murray, Berkman, Gordon, Levy, Murray & Palda, Cleveland, Ohio, for plaintiff.

Daniel J. O'Loughlin, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

ANN ALDRICH, District Judge.

This is an action brought by East Side News, Inc. against the City of Geneva, Ohio, and certain of its officials seeking to redress the deprivation, under color of state law, of certain rights, privileges and immunities secured by the Constitution and laws of the United States. Pendent state law claims are also asserted. The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1331 and § 1334.

Plaintiff seeks a declaration that Ordinance No. 1938 of the City of Geneva is unconstitutional on its face and as applied, an injunction prohibiting the enforcement of the Ordinance against the plaintiff, and the costs of this action, including reasonable attorney fees.

For the reasons set forth below, judgment is entered for the plaintiff. The City of Geneva and its officials are directed to issue plaintiff a Business Occupancy Permit under Ordinance No. 1938, and plaintiff is awarded its costs, including reasonable attorney fees.

### Findings of Fact

#### I

The City of Geneva is a small town in Ashtabula County, Ohio. It is located on state route 20, approximately 47 miles northeast of Cleveland, Ohio, and 10 miles from Ashtabula, Ohio.

Though land within the City is zoned for residential, retail business, commercial, and industrial uses, the City views itself as primarily a residential community, and its traditional orientation has been towards the family, and towards businesses and activities which are family-oriented.

Non family-oriented businesses, in the City's view, "appeal to special populations which are not normally residing in family-oriented communities". Such businesses "often bring outside influences into the community", tending to "increase the crime rate and undermine the moral and social values of the family members". Furthermore, such businesses, because they appeal to special populations, change the character of the commercial environment, decrease property values and drive other businesses away from the central business district, leading to a deterioration of such district.

On August 30, 1979, the City enacted as an emergency measure Ordinance No. 1938, in order to maintain its traditional orientation, and to encourage non-family-oriented businesses to locate elsewhere, "where their patronage would be more probable and profitable, and where their impact would be more acceptable". The ordinance prohibits the operation of any business anywhere within the City without a Business Occupancy Permit, which Permit may be issued in accordance with the procedures and standards set forth in the ordinance.

The procedures set forth in the ordinance are fairly straightforward. When the City Council determines that a proposed business is "oriented towards serving or attracting a special population of customers, and not oriented towards activities reasonably related to the health, education and welfare of the family", such proposed business must submit a Community Impact Statement, which shall include, *inter alia*, a description of the merchandise or services to be sold, and a profile of expected customers.

Based upon the Statement, and the result of a public hearing which may be ordered by the Council, the Council may deny the Permit if it finds that the proposed business will have a significant adverse impact on the community and will be significantly inconsistent with maintaining the traditional orientation of the City, provided that a Permit shall not be denied "solely on the basis of the content of the written, audio or visual communications sold or made available to customers".

## II

The plaintiff, East Side News, Inc., desires to open a Variety Bookstore on the main street of Geneva's downtown business district. In addition to other merchandise, the Bookstore would sell sexually-oriented books, magazines, films and video tapes, which items are conceded to be non-obscene.

On December 14, 1979, plaintiff applied for a Business Occupancy Permit. Without any preliminary finding by the Council, plaintiff's attention was directed to Ordinance No. 1938, and plaintiff was advised to prepare and file a Community Impact Statement. The Statement was filed on March 27, 1980.

Following public hearings, during which significant public opposition to the opening of the Variety Bookstore was expressed, the Council found that the proposed Bookstore would have "a significant adverse impact upon the Geneva Community, and would be significantly inconsistent with the purpose of Ordinance No. 1938".

Therefore, on June 23, 1980, the Council denied the application of East Side News, Inc. for a Business Occupancy Permit. The citizens present responded with a standing ovation.

We may note here that no other business in the City has been required to prepare a Community Impact Statement, and that Permits have been routinely issued by the City without any affirmative actions by the Council. Plaintiff's is the only business which has been required to submit a Community Impact Statement and which has been denied a Permit.

### Conclusions of Law

This matter has been submitted for a decision upon the pleadings, an agreed stipulation of facts, and joint exhibits. It is upon this sparse record, which leaves open more questions than it answers, that the plaintiff asks this Court to exercise its ultimate and supreme function of determining the constitutionality of a state law.

## I

■ The sale of books and magazines is an activity protected under the First Amendment, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980).

■ Where a land use control law, such as Ordinance No. 1938, adversely affects a property interest, such law will be sustained if it is rationally related to a legitimate state interest, and does not deprive the owner of an economically viable use of his property. Where a land use control law infringes upon a protected liberty, such as the operation of a bookstore, it must be narrowly drawn and must further a sufficiently substantial state interest. *Schad v. Borrough of Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d 94 (6th Cir. 1981).

■ In *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Court upheld a local ordinance which dispersed adult movie theatres, concluding that such dispersion was an incidental burden upon First Amendment rights and justified by the City's interest in preserving the character of its neighborhoods. *Young* did not uphold the total exclusion of, or great reduction in the number of, theatres showing adult, but not obscene, materials. *Mt. Ephraim.* Implicit in the Court's opinion is the conclusion that total suppression or great reduction in the number of adult establishments would not be justified by the City's interest in preserving the character of its neighborhoods, *Purple Onion, Inc. v. Jackson*, 511 F.Supp. 1207 (N.D.Ga.1981), or in the "decent life", *Mt. Ephraim, supra, Keego Harbor, supra.*

## II

■ Ordinance No. 1938 is not directed, *eo nomine*, towards adult establishments such as plaintiff's bookstore. It applies to all business within the City equally, and it expressly precludes the denial of a Business Occupancy Permit "solely on the basis of the content" of the communications made available to customers. On its face, the ordinance has a minimal effect upon First Amendment rights, and is justified by the City's interest in preserving the character of the City and its neighborhoods.

On the record before it, this Court cannot say that the ordinance does, or would, result in the total suppression or great reduction in the number of adult establishments within the City. Nor can this Court say that the ordinance does, or would, greatly restrict the access of the citizens of the City to adult, but non-obscene, materials.

While plaintiff attempts to cast its arguments in terms of censorship, the ordinance on its face does not deal with books or expression, and there is no evidence in the record from which this Court can conclude that adult, but non-obscene, books are not widely available in the City in other establishments, permitting the public to satisfy its appetite for sexually explicit fare, or that distributors of such fare are denied access to the market. *Young.*

Likewise, in the absence of any evidence as to the date on which plaintiff obtained the lease of its premises, the Court cannot conclude that Ordinance No. 1938 was enacted solely for the purpose of preventing plaintiff from opening its bookstore.

In short, all that the record demonstrates is that plaintiff was denied a permit to open a bookstore, and that other businesses were not. To conclude therefrom that the Ordinance in question is unconstitutional on its face or as applied requires a leap of faith which this Court is unwilling to take in the absence of evidence to support such a conclusion.

## III

In *Chicago & G. T. Ry. Co. v. Wellman*, 143 U.S. 339, at 346, 12 S.Ct. 400, at 402, 36 L.Ed. 176 (1892), the Supreme Court noted:

... [H]ow easily courts may be misled into doing grievous wrong to the public, and how careful they should be to not declare legislative acts unconstitutional upon agreed and general statements, and

without the fullest disclosure of all material facts.

The record in this case will not support a constitutional adjudication, particularly where the case can be disposed of on other grounds. *United States v. Thirty Seven Photographs*, 402 U.S. 363, at 364, 91 S.Ct. 1400 at 1402, 28 L.Ed.2d 822 (1971).

The ordinance here in question permits the City Council to deny a Business Occupancy Permit to any business which appeals to special populations not normally residing in family-oriented communities. Where the business at issue involves the sale of books, magazines, films, etc., the determination of whether the business would appeal to such special populations is necessarily based solely upon the content of such books, magazines, etc.[1]

The ordinance expressly precludes the City from denying a Business Occupancy Permit solely on the basis of the content of the communications sold or made available to customers. Hence, the denial of the Business Occupancy Permit to plaintiff in this case was not authorized by Ordinance No. 1938.

Because the City acted in violation of its own ordinance in denying plaintiff a Business Occupancy Permit, such denial cannot stand.

### Remedy

Defendants are hereby ordered to issue plaintiff a Business Occupancy Permit under Ordinance No. 1938. Judgment for the plaintiff is entered, at defendants' costs, including plaintiff's attorney fees, in an amount to be determined in due course.

IT IS SO ORDERED.

---

1. It should be noted that the City has stipulated that the Permit was denied for the purpose of preventing plaintiff from selling sexually-oriented adult materials, clearly indicating that it is the *content*, and only the content, of such materials that the City Council relied upon in its determination.